UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JAMES P. CUSICK, SR.,

    Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

    Defendant.

Civil Action No. TDC-22-1611

**MEMORANDUM OPINION**

Plaintiff James P. Cusick, Sr., a resident of St. Mary's County, Maryland, has filed suit against the United States Department of Justice ("DOJ"), alleging that he was denied the right to purchase a firearm based on the National Instant Criminal Background Check System ("NICS"), in violation of his rights under the Second, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. DOJ has filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

Cusick is a resident of St. Mary's County, Maryland. As he has acknowledged in the Amended Complaint, he has been convicted of a crime punishable by a term of imprisonment exceeding one year. He has also twice been committed to a mental institution.

On June 6, 2022, Cusick went to a Dick's Sporting Goods store located in Lexington Park, Maryland to purchase a firearm. Upon arriving at the store, he requested to purchase a .22 caliber rifle. When he provided the store clerk with his driver's license, the clerk entered his identification

information into a database on a computer. The clerk then instructed him to "answer the NICS questions" on the same computer. Am. Compl. ¶ 10, ECF No. 23. After he entered responses to the questions, the clerk informed him that he was not eligible to purchase a firearm based on "the computer read out by the NICS." *Id.* The clerk then provided Cusick with a document entitled "NICS Guide for Appealing a Firearm Transfer, Your Rights and Responsibilities" ("the NICS Appeal Guide"), which Cusick has attached to his complaint. *Id.* The NICS Appeal Guide provides information on how to submit an appeal of a denial of the right purchase a firearm based on NICS, which includes by submitting a request to "the agency that conducted the check" through the NICS system, "appealing directly through the processing agency," or by submitting an "appeal request to the [Federal Bureau of Investigation ("FBI")] Criminal Justice Information Services (CJIS) Division's NICS Section." NICS Appeal Guide at 2, Am. Compl. Ex. 1, ECF No. 23-1. The NICS Appeal Guide also states, "You may request the reason for your denial or delay from the FBI in writing" and provides an address for submitting such a request to the FBI CJIS NICS Section. *Id.*

On July 1, 2022, Cusick filed the initial Complaint in this action. In the operative Amended Complaint, Cusick alleges that, pursuant to 5 U.S.C. § 702, DOJ's denial of his purchase of a firearm violated his constitutional rights because the federal prohibitions on possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year, 18 U.S.C. § 922(g)(1) (2018), and possession of a firearm by a mentally ill person, 18 U.S.C. § 922(g)(4), violate the Second Amendment to the United States Constitution. He also alleges violations of the Fifth, Sixth, and Fourteenth Amendments, which the Court construes as claims that his right to due process of law was violated by the summary denial of his firearm purchase based on his responses to questions about his criminal record and mental health history.

## DISCUSSION

In its Motion, DOJ seeks dismissal on the following grounds: (1) the Court lacks subject matter jurisdiction over Cusick's claims because Cusick has not properly alleged federal question jurisdiction, he does not have standing, and there has been no final agency action, as required to support a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704 (2018); and (2) Cusick has failed to state a plausible claim for relief as to all of his claims.

### I. Subject Matter Jurisdiction

DOJ first argues that this case should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### A. Federal Question Jurisdiction

DOJ initially argues that the Court does not have subject matter jurisdiction over Cusick's claims because Cusick has not properly established federal question jurisdiction. Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Federal courts have original jurisdiction over civil cases, with some exceptions not relevant here, only in two instances: (1) under federal question jurisdiction, where the case involves an issue of federal law, *see* 28 U.S.C. § 1331 (2018), or (2) under diversity jurisdiction, where the parties in the case are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. Here, Cusick alleges that the Court has federal question jurisdiction based on his challenge to the constitutionality of a federal statute, 18 U.S.C. § 922(g). Regardless of other arguable flaws and procedural defects with the asserted claims, where Cusick's claim plainly challenges the constitutionality of a federal law, the Court finds that it has subject matter jurisdiction over Cusick's claims. *See* 28 U.S.C. § 1331; *Davis v. Pak*, 856 F.2d 648, 650–51 (4th Cir. 1988) (noting that a plaintiff who asserts a substantial constitutional violation has met the requirement for federal question jurisdiction so long as the claim is not "truly frivolous").

### B. Standing

DOJ also argues that Cusick does not have standing to assert his claims. Specifically, DOJ asserts that all federally licensed firearms dealers such as Dick's Sporting Goods, also known as "federal firearms licensees" or "FFLs," are required to complete a two-step background check process. Mot. Dismiss at 3, ECF No. 27-1. First, the FFL must collect the prospective purchaser's identification information on a Form 4473, a form administered by the Bureau of Alcohol,

Tobacco, Firearms, and Explosives ("ATF"), a component agency of DOJ. Next, if the responses to questions on the Form 4473 reflect that the prospective purchaser is eligible to purchase a firearm, the FFL must submit the prospective purchaser's identification information to the NICS database, which is administered by the FBI, a component agency of DOJ. However, if the FFL determines from the responses that the prospective purchaser is prohibited from purchasing a firearm, such as responses acknowledging that the individual has been convicted of a crime punishable by a term of imprisonment exceeding one year or has been committed to a mental institution, the FFL is directed to terminate the transaction and refrain from submitting the individual's name to NICS. *See* 27 C.F.R. § 478.124(f) (2022); U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives, Form 4473 at 6 (2022). DOJ thus asserts that the electronic questionnaire completed by Cusick must have been Form 4473 and, because his answers to the questions on Form 4473 rendered him ineligible to purchase a firearm, his information was never submitted to NICS. In turn, it argues that because there was no denial issued by NICS, the decision to deny his purchase was made by the FFL, not DOJ, so Cusick lacks standing.

An "essential element" of the Constitution's limitation on the power of the federal courts is "that any party who invokes the court's authority must establish standing." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Establishing standing requires the plaintiff to show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that a favorable decision will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, there can be no serious dispute that Cusick has alleged a concrete injury, specifically, the denial of the firearm he sought to purchase. DOJ's standing argument appears to be that the injury was not traceable to DOJ conduct or redressable by a favorable ruling. Here, however, Cusick alleges that the store clerk told him that his purchased was denied based on

"the computer read out by the NICS." Am. Compl. ¶ 10. Cusick has also submitted with the Amended Complaint a statement by the store clerk stating that Cusick was "auto-denied a firearms transaction" based on his answer to questions on Form 4473. Am. Compl. Ex. 2, ECF No. 23-2. The term "auto-denied" suggests a determination made by a computer, not the store clerk, and the fact that the store clerk also gave Cusick the NICS Appeal Guide supports the inference that the denial was based not on a unilateral decision by the FFL, but based on an automated response from a computer system controlled by NICS, even if no actual background check was conducted by NICS. Construed in the light most favorable to the nonmoving party, these allegations are sufficient to show that the denial was traceable to DOJ. Where Cusick's responses to questions about his criminal history and mental health history clearly caused the denial, a finding that both of the identified prohibitions on firearm possession are unconstitutional would provide redress to him. Accordingly, the Court finds that, at the outset of the case, Cusick has standing.

## C. Final Agency Action

Relatedly, DOJ also argues that Cusick's claims must be dismissed because there has been no final agency action as required under the APA. "The APA waives the federal government's sovereign immunity for a limited set of suits, brought by "a person suffering legal wrong because of agency action" to obtain relief "other than money damages." *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019) (quoting 5 U.S.C. § 702). The APA thus provides the mechanism by which an individual may challenge a determination by a federal agency, including by asserting a constitutional challenge to a statute underlying the agency's action. *See, e.g., Abourezk v. Reagan*, 785 F.2d 1043, 1051 (D.C. Cir. 1986) (finding that the APA applied to the plaintiffs' challenge to the constitutionality of the State Department's application of a federal statute to exclude from the United States non-citizens invited by plaintiffs to be speakers and

meeting participants). Cusick has specifically invoked the APA in asserting his constitutional challenges. *See* Am. Compl. ¶ 4. Under the APA, a court may consider a challenge to an action by a federal agency only when the agency has taken a "final agency action" on the issue. 5 U.S.C. §704; *City of New York*, 913 F.3d at 430. Here, however, as discussed above, Cusick has asserted sufficient allegations to support the conclusion that the "auto-denial" of his firearm purchase was by a DOJ or its NICS computer system. *See supra* part I.B. Although Cusick apparently did not pursue the appeals process outlined in the NICS Appeal Guide, neither the Guide nor the applicable regulations states that such an appeal is mandatory. *See* NICS Appeal Guide; 28 C.F.R. § 25.10. Accordingly, such an appeal was not necessary to render the auto-denial a final agency action. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (holding that an administrative appeal to a "superior agency authority" is a prerequisite to judicial review under the APA only when such an appeal is "expressly required" by statute or an agency rule). Accordingly, the Court will not grant the Motion based on a failure to secure a final agency action.

## II.   Failure to State a Claim

DOJ also seeks dismissal on the grounds that the Amended Complaint fails to state a claim, primarily based on its argument that the restrictions on firearm possession set forth in 18 U.S.C. § 922(g)(1) and § 922(g)(4) do not violate the Second Amendment.

### A.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual

allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B. Felon-in-Possession

Cusick first alleges that 18 U.S.C. § 922(g)(1), commonly referred to as the felon-in-possession statute, is facially unconstitutional under the Second Amendment. Under this provision, it is unlawful for a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce" any "firearm or ammunition." 18 U.S.C. § 922(g)(1). In determining whether a restriction relating to firearms violates the Second Amendment, the Court must apply the analysis set forth in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). In *Bruen*, the Court considered the two-step test that Courts of Appeals had generally adopted for assessing Second Amendment claims after *District of Columbia v. Heller*, 554 U.S. 570 (2008). At the first step, the Government could justify its regulation by showing that the challenged law regulates activity outside the scope of the Second Amendment right as originally understood, and if it successfully does so, "then the analysis can stop there; the regulated activity is categorically unprotected." *Bruen*, 142 S. Ct. at 2126. At the second step, courts engaged in a means-end analysis, applying either strict or intermediate scrutiny. *Id.*

The *Bruen* Court generally reaffirmed the first step by stating that it "is broadly consistent with *Heller*," but it rejected the means-end second step. *Id.* at 2127. It then adopted a Second Amendment test of considering first, whether the "Second Amendment's plain text covers an individual's conduct," and if so, "the Constitution presumptively protects that conduct." *Id.* at 2129–30. If the regulation covers Second Amendment conduct, rather than engaging in a means-

8

end inquiry, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

Cusick's argument fails at the first step of whether the conduct at issue is even protected by the Second Amendment. In *Heller*, in which the Supreme Court first identified an individual right to possess a firearm under the Second Amendment, the Court described that right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. The Court also specifically stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626–27.

In *Bruen*, the Court adopted this understanding of the scope of the Second Amendment right when it stated that in *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. While *Bruen* then expanded the right to include possession outside the home for self-defense, *id.* at 2156, it cannot fairly be read to have expanded the Second Amendment right to non-law-abiding citizens. In most of its references to the Second Amendment right, it continued to frame it as a right of "law-abiding citizens," including on approximately 11 occasions, and several Justices who joined the majority opinion, including Justice Alito and Justice Kavanaugh, highlighted in concurring opinions their understanding that *Bruen* did not disturb *Heller*'s determination that restrictions on felons possessing firearms are presumptively lawful. *See id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring); *see also id.* at 2189 (Breyer, J., dissenting).

The majority opinion in *Bruen* demonstrated in multiple ways that its redefinition of the Second Amendment test did not overrule or alter *Heller* on this issue. First, it noted that it was not

questioning the constitutionality of state laws requiring a permit to carry a gun that provide that the permit "shall issue" if the applicant meets certain eligibility requirements, because those laws "are designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 2138 n.9. Such a finding is inconsistent with the notion that a felon has the same Second Amendment right as a "law-abiding citizen." Second, it effectively reaffirmed *Heller*'s similar identification of "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" as presumptively lawful, while then finding that category inapplicable to the general restriction at issue in that case, a New York law that conditioned the issuance of a permit to carry a firearm on the applicant demonstrating "a special need for self-protection." *Id.* at 2122, 2133. It also ultimately struck down the New York law because "it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156. If *Bruen* had expanded the Second Amendment right to encompass non-law-abiding citizens, it would have had no need to reference "law-abiding citizens" in this manner and would have more explicitly overruled *Heller* on these points, particularly where the Courts of Appeals have frequently relied on *Heller* on this point separate and apart from the means-end analysis that it did reject. Thus, *Bruen* did not expand the Second Amendment right beyond the right of law-abiding citizens to possess a firearm for self-defense. *See United States v. Riley*, 635 F. Supp. 3d 411, 424 (E.D. Va. 2022) (finding that *Bruen* did not disturb the longstanding prohibitions on possession of firearms by felons).

Where *Bruen* did not alter *Heller* on this point, the Court finds that it also remains bound by existing Fourth Circuit precedent holding that the Second Amendment right is limited to law-abiding citizens, precedent which has not been overruled by *Bruen*. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (holding that the core right protected by the Second Amendment

is "the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense"); *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (finding that the Second Amendment right established in *Heller* is limited to "law-abiding citizens"). Notably, "the conviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment." *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017).

Because the Court determines that the conduct covered by 18 U.S.C. § 922(g)(1) is outside the scope of rights covered by the Second Amendment under *Heller*, *McDonald*, and *Bruen*, the Court need not engage in the analysis of analogues to 18 U.S.C. § 922(g)(1) in the historical tradition of the United States, as outlined in *Bruen*. *See, e.g., Bruen*, 142 S. Ct. at 2133. Accordingly, the Court finds that the felon-in-possession statute does not infringe on the Second Amendment right as currently defined by the Supreme Court.

### C. Remaining Claims

In light of the Court's determination that 18 U.S.C. § 922(g)(1) is constitutional, Cusick's remaining claims necessarily fail. First, his claim that 18 U.S.C. § 922(g)(4), which prohibits possession of a firearm by a mentally ill individual, fails for lack of standing. As discussed above, for Cusick to have standing as to a particular claim, his injury must be redressable by a favorable ruling. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (stating that a plaintiff must demonstrate standing for "each claim" brought before the court); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (stating that, for a plaintiff to have standing, the plaintiff's injury be "redressable by a favorable ruling"). Where Cusick has acknowledged that he has a prior conviction for a crime punishable by a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1), and this Court has found the federal felon-in-possession statute constitutional, a finding that § 922(g)(4) is unconstitutional would not redress his injury of having his firearm purchase

denied because he necessarily would remain barred from possessing a firearm by § 922(g)(1). The Court therefore finds that upon the Court's ruling on the constitutionality of § 922(g)(1), Cusick no longer has standing to pursue his § 922(g)(4), which must therefore be dismissed. *Town of Chester*, 137 S. Ct. at 1650; *Monsanto Co.*, 561 U.S. at 149; *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) ("To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.").

As to his due process claims, where Cusick has acknowledged that he is categorically disqualified from possessing a firearm under § 922(g)(1), and he likewise has not alleged facts showing that any additional procedural requirements would result in a redress of his injury from the denial of a firearm purchase, he again has not established the standing requirement of redressability. *Town of Chester*, 137 S. Ct. at 1650; *Uzuegbunam*, 141 S. Ct. at 796; *Monsanto Co.*, 561 U.S. at 149. Moreover, on the merits, Cusick has not alleged sufficient facts to support a claim that the existing regime for using NICS to determine eligibility to purchase a firearm violates his due process rights because he has not provided a basis to conclude that the auto-denial of claims when a prospective firearms purchaser admits to a prior conviction covered by § 922(g)(1) could result in an erroneous deprivation of rights. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (stating that due process analysis includes consideration of "the risk an erroneous deprivation" of a protected interest "through the procedures used"). The claim is further undermined by the fact that, as acknowledged in the Amended Complaint and as reflected in the NICS Appeal Guide, there is a specific appeal process by which a prospective firearm purchaser may seek review of a denial of a purchase based on the results provided by NICS. NICS Appeal

Guide; 28 C.F.R. § 25.10. The Court therefore finds that Cusick's due process claims fails both based on a lack of standing and the failure to state a plausible claim for relief.

## CONCLUSION

For the foregoing reasons, DOJ's Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date:  August 18, 2023



THEODORE D. CHUANG
United States District Judge